Filed 7/10/24  O'Neill v. Cara CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE O'NEILL, | |
| Plaintiff and Respondent, | G062076 |
| v. | (Super. Ct. No. 30-2019-01092091) |
| ANTHONY P. CARA et al., | |
| Defendants and Appellants. | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge.  (Retired Judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Thaler Law and Jesse J. Thaler for Defendants and Appellants.

The Samini Firm, Bobby Samini, Ignacio J. Lazo for Plaintiff and Respondent.

\* \* \*

Defendants Anthony P. Cara, Peter Nisson, and Consumer Defense Law Group, P.C., a law firm and its two attorneys, appeal from a judgment awarding $113,581.95 in damages to plaintiff Julie O'Neill, their former client, for their malpractice. Plaintiff's home was subject to two encumbrances—a mortgage and a lien. The lienholder initiated foreclosure proceedings, and plaintiff's home was sold at a foreclosure sale.

After a bench trial, the trial court found defendants' malpractice caused the foreclosure sale because they could have taken actions to prevent the foreclosure. The trial court initially awarded $437,000 in damages to plaintiff, but it reduced the award to $113,581.95 after defendants filed a motion for new trial noting certain errors in the court's initial calculation. Defendants filed a second motion for new trial, contending the court's damages calculation was still incorrect and arguing the $113,581.95 award should be further reduced. The court denied the motion for new trial and entered judgment in plaintiff's favor.

On appeal, defendants contend the court's award of $113,581.95 is not supported by the evidence. Relying on the court's statements in a minute order issued in response to defendants' first motion for new trial, defendants likewise argue the court made errors in its calculation. We disagree and affirm the judgment.

FACTS

*Foreclosure of Plaintiff's Home*

Plaintiff's home in San Clemente was subject to a first deed of trust owned by Wells Fargo, N.A., and a second deed of trust owned by William Kevin O'Bryon. The first deed of trust had a principal balance of

2

$482,653.93. The second deed of trust had a principal balance of $91,668.[1] It is undisputed plaintiff had the ability to cure any default regarding the second deed of trust.

In February 2018, plaintiff retained defendants as her attorneys in connection with a pending foreclosure sale of her home by O'Bryon. Defendants' efforts were ultimately unsuccessful, and plaintiff's home was sold at a foreclosure auction for $437,000 in July 2018. In addition to paying $437,000, the purchaser was subject to liability for $482,653.93, the remaining balance on the first deed of trust. The proceeds of the $437,000 sale's price were distributed as follows: (1) $113,581.95 was paid to O'Bryon in satisfaction of the second deed of trust and for costs of the foreclosure; and (2) $323,418.05 of the surplus (i.e., overbid) proceeds was paid to plaintiff.

*The Complaint*

In August 2019, plaintiff filed the operative complaint alleging claims for legal malpractice and breach of fiduciary duty against defendants and another individual who is not a party to the instant appeal. According to the complaint, plaintiff retained defendants as her counsel to prevent the foreclosure sale of her home by O'Bryon, the holder of the second deed of trust. Defendants allegedly told plaintiff they could enjoin the foreclosure sale because of certain misconduct by the lender. But they gave false information to plaintiff about the viability of her claims against her lender and negligently delayed their litigation filings, resulting in the foreclosure of her home. During their representation of plaintiff, defendants filed an

---

[1] At some point, it appears plaintiff and O'Bryon agreed to a reduced lump sum payment of $75,000.

unsuccessful motion to reopen plaintiff's bankruptcy case, which had been closed since 2014. After the foreclosure sale, defendants also filed an action on plaintiff's behalf against O'Bryon for declaratory relief, claiming plaintiff had satisfied the lien. Plaintiff allegedly did not know defendants were going to file the latter action.

*The Court's First Minute Order and Defendant's First Motion for New Trial*

After a bench trial, the court issued a minute order in August 2022 finding defendants liable for malpractice. The court held the foreclosure sale's price of $437,000 represented plaintiff's lost equity and awarded that amount in damages to plaintiff. The court did not rely on the parties' other proposed calculations because they were not reliable and were "heavily dependent on guesswork." The court also declined to award damages for emotional distress or punitive damages.

In response, defendants filed a motion for new trial and argued the court erred in calculating damages because plaintiff had already received the equity in her home. They noted the court had found the fair market value of the property was the $437,000 foreclosure sale's price. According to defendants, plaintiff already benefited from those proceeds because she received $323,418.05 in surplus proceeds while the remainder was paid to O'Bryon in satisfaction of the second deed of trust.

*The Court's Second Minute Order*

After a hearing on defendants' motion for new trial, the court issued a minute order reducing the damages award to $113,581.95. The court explained plaintiff's damages were the value of the home she lost

4

through the preventable foreclosure minus any value she received as a result of the foreclosure.

Regarding the value of the home, the court appears to have calculated this amount as $1,011,321.93 by adding the following numbers: (1) $437,000 for the foreclosure sales price; (2) $482,653.93 for the remaining balance on the first deed of trust, which the purchaser at the foreclosure sale was committed to pay; and (3) $91,668 for the remaining balance on the second deed of trust owed by O'Bryon. The court mistakenly stated the purchaser at the foreclosure sale was committed to pay the $91,668 balance on the second deed of trust. This statement is central to defendants' arguments on appeal. The court also suggested the value of the home alternatively could be calculated based on the price received by the foreclosure purchaser when it later sold the home in 2019 "and then factor[ing] in a number representing market appreciation and another amount for the costs of refurbishing the house." But the court did not rely on the latter calculation because it entailed "guesswork" and "speculation." The court further noted plaintiff's case was based on a theory that homes do not sell at a foreclosure for their fair market value. But the court held plaintiff presented "no evidence of what adjustment should be made to reflect this theoretical foreclosure deficit."

Regarding the value plaintiff received because of the foreclosure, it appears the court calculated this amount as $897,793.98 by adding the following numbers: (1) $323,418.05 for the surplus proceeds plaintiff received; (2) $482,653.93 for the remaining balance on the first deed of trust; and (3) $91,668 for the remaining balance on the second deed of trust. The court acknowledged its prior order mistakenly overlooked the $323,418.05

5

plaintiff had received. The court believed this "significant overage indicate[d] [the] house did not sell for a large foreclosure discount—if any."

Based on the above, the court calculated plaintiff's net loss as $113,581.95 ($1,011,321.93 minus $897,739.98). Although defendants' counsel suggested the net proceeds of any sale should be reduced by a 6 percent brokerage fee, the court did not include this in its calculation because it was speculative and "by no means certain." The court directed plaintiff's counsel to prepare a judgment consistent with the court's order.

*Defendant's Second Motion for New Trial and the Court's Third Minute Order*

A few days later, defendants filed another motion for new trial and again argued the court erred in calculating damages. According to defendants, plaintiff either had already received all of the equity in her home or was damaged in the amount of $21,913.95 ($113,581.95 representing the balance remaining after plaintiff received her surplus proceeds minus $91,668 representing the remaining balance on the second deed of trust).

In opposition, plaintiff argued defendants misunderstood "the distinction between a lending instrument that forecloses [versus] one that is paid off." At the hearing, plaintiff's counsel explained plaintiff did not benefit by having a third party pay off the O'Bryon lien. Instead, plaintiff's counsel suggested plaintiff was damaged in the amount that was paid to O'Bryon. Her counsel argued: "It seems wholly shocking to me that the defendants now are here claiming that they should get the benefit from the foreclosure for which they caused."

After the hearing, the court issued a third minute order denying defendants' motion for new trial and objections to the proposed judgment. The court indicated it would sign the proposed judgment. The minute order

6

did not include any additional details about the court's reasoning or calculations.

*Judgment*

In November 2022, the court entered judgment in plaintiff's favor and awarded $113,581.95 in damages. Defendants filed a timely notice of appeal.

DISCUSSION

Defendants contend the court's calculation of damages is not supported by the evidence. Relying on the court's second minute order, defendants argue there is no evidence to support the court's finding that the purchaser at the foreclosure sale was committed to pay $91,668 due on the second deed of trust. Instead, they emphasize the second deed of trust was paid off by the proceeds of the foreclosure, so it was a benefit plaintiff received. They accordingly claim the court should have reduced the $113,581.95 damages award by $91,668, resulting in an award of $21,913.45. The court did not err.

At the outset, we address defendants' assertion that the trial court's second minute order "was effectively a Statement of Decision." Defendants alternatively argue the court's factual findings within the minute order are part of the judgment because the judgment generally references the minute order. Not so. The court did not issue a statement of decision.

A trial court typically issues a statement of decision "explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.) Defendants do not dispute they failed to

7

request a statement of decision or that the minute order was issued in response to their motion for new trial. The trial court also appears to have followed California Rules of Court, rule 3.1590(a) by announcing its tentative decision in the minutes and directing plaintiff to prepare a proposed judgment. "The tentative decision does not constitute a judgment and is not binding on the court." (*Ibid.*; see *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 551-552 [holding the trial court's written opinion and ruling was not a statement of decision "but merely a tentative decision [that could not] be used to impeach the judgment"].) "[A] tentative statement of decision . . . can be modified or changed as the judge sees fit before entry of judgment." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1284.) Indeed, this is exactly what the trial court did after it issued its first minute order. It modified that tentative decision when it issued the second minute order. There is no reason why the second minute order should be treated differently.

In the absence of a statement of decision, we accordingly only look to the judgment to determine error. "[T]he necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.) We also note the amount of damages awarded is generally "'"a fact question . . . [and] an award of damages will not be disturbed if it is supported by substantial evidence."'" (*Madani v. Rabinowitz* (2020) 45 Cal.App.5th 602, 610.)

Here, the judgment noted there were trial proceedings and new trial motions resulting in minute orders. The judgment then concluded defendants were liable for $113,581.95 without specifying any reason or calculation. The evidence supports the court's implied finding that

8

$113,581.95 ultimately was not a benefit plaintiff received and that O'Bryon would not have received that amount if defendants had done their job properly. Among other things, plaintiff's expert witness testified defendants may have been able to avoid the foreclosure sale by contacting the beneficiary of the second deed of trust, which they never did. By contacting the beneficiary, the expert explained defendants could have tried to negotiate a reduction in the principal balance or try to arrange for mediation. According to the expert, defendants' filing of an adversary complaint in bankruptcy court and a declaratory relief action after the foreclosure sale was valueless. The court accordingly did not err by awarding damages to plaintiff in an amount equal to the amount that would not have been pocketed by O'Bryon absent defendants' malpractice.

## DISPOSITION

The judgment is affirmed. Plaintiff is entitled to costs on appeal.

SANCHEZ, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

9